IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **TROY SHANNON HARLOW, et al.,**  ) <br> Plaintiff,  ) <br>  ) <br> v.  ) <br>  ) <br> **WELLS FARGO & CO.** and  ) <br> **WELLS FARGO BANK, N.A.,**  ) <br> Defendants.  ) | Case No. 7:20-mc-00030 <br> 5:20-cv-00046 <br><br> By: Michael F. Urbanski <br> Chief United States District Judge |

## MEMORANDUM OPINION

This matter comes before the court on defendants', Wells Fargo & Co. and Wells Fargo Bank, N.A. (collectively "Wells Fargo"), motion to withdraw the reference of this adversary proceeding to bankruptcy court and consolidate the withdrawn case with Forsburg v. Wells Fargo & Co., et al., No. 5:20-cv-00046 (W.D. Va. filed July 23, 2020) (hereinafter "the Forsburg litigation"). Mot. to Withdraw Reference, ECF No. 1. At Wells Fargo's request, the court held a motions hearing on December 10, 2020, at 2:00 pm via videoconference. ECF No. 2. Subsequently, plaintiffs Troy Harlow, Mark Estes, Kimberly Fewell, Beatriz Villegas-Rodriguez, and Rodolfo Rodriquez ("the Harlow plaintiffs"), by counsel, filed their brief in opposition to the motion to withdraw the reference. ECF No. 5. Wells Fargo then filed a reply. ECF No. 10. Because 28 U.S.C. § 157(d) requires the court to withdraw the reference under these circumstances and because the factors for discretionary withdrawal weigh in Wells Fargo's favor, the court will **GRANT** Wells Fargo's motion to withdraw the reference and consolidate this case with the Forsburg litigation.

## I. BACKGROUND

The adversary complaint at issue here, filed within Harlow's bankruptcy case, arises out of Wells Fargo's decision to put some of its customers' mortgages—including those of the Harlow plaintiffs, who are all Chapter 13 debtors in bankruptcy proceedings—into forbearance allegedly as part of its response to the COVID-19 pandemic and the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136 (Mar. 27, 2020). Wells Fargo argues that, "[f]aced with a surge in COVID related loss mitigation requests, and little time to analyze the new statute, servicers began to dutifully offer assistance to borrowers affected by the pandemic." ECF No. 1 at 28. The Harlow plaintiffs allege that Wells Fargo unilaterally filed false mortgage forbearance notices in bankruptcy courts across the country without their consent, which place Chapter 13 debtors at risk of having their bankruptcy cases dismissed or denied due to over- or under-payment of their mortgage obligations. ECF No. 5 at 2–3. Accordingly, they filed an 8-count adversary complaint in the bankruptcy court, alleging the following causes of action: (1) violation of the Racketeering Influenced and Corrupt Organizations Act (RICO); (2) unauthorized practice of law; (3) violation of Fed. R. Bankr. P. 3002.1(b); (4) objection to false forbearance notices; (5) violation of the automatic stay pursuant to 11 U.S.C. § 362(a); (6) sanctions for abuse of the bankruptcy process under 11 U.S.C. § 105(a); (7) contempt; (8) fraud on the court; and (9) defamation. ECF No. 5 at 3–4.

In its present motion, Wells Fargo moves to withdraw the adversary complaint from the bankruptcy case into this district court and consolidate it with the Forsburg litigation, arguing that withdrawal is either mandatory, given the nature of the Harlow plaintiffs' claims, or withdrawal is warranted for cause shown. ECF No. 1 at 27–39. The Harlow plaintiffs assert

2

that withdrawal is neither mandatory nor supported by cause shown because, inter alia, their claims are entirely concerned with the unique harms inflicted on bankruptcy debtors and should be adjudicated in bankruptcy court.

## II.  WITHDRAWAL FROM BANKRUPTCY COURT

Federal district courts have original jurisdiction over all bankruptcy cases and related proceedings. 28 U.S.C. § 1334. By local rule and pursuant to 28 U.S.C. § 157(a), the District Court for the Western District of Virginia automatically refers "all cases under Title 11 of the United States Code and all proceedings arising under Title 11 or arising in or related to a case under Title 11" to this district's bankruptcy judges. W.D. Va. Gen. R. 3(a); see also Stern v. Marshall, 564 U.S. 462, 473 (2011) ("Congress has divided bankruptcy proceedings into three categories: those that 'arise under title 11'; those that 'arise in' a title 11 case' and those that are 'related to a case under title 11.'") (quoting 28 U.S.C. § 157(a)); MDC Innovations, LLC v. Hall, 726 F. App'x 168, 170 (4th Cir. 2018) ("District courts may refer any or all of such proceedings to the bankruptcy court."). After making such a referral:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).[1] "The first sentence of the statute identifies 'permissive withdrawal,' and the second sentence identifies 'mandatory withdrawal' of proceedings referred to the Bankruptcy Court." In re Dozier Fin., Inc., No. 4:18-cv-1888-AMQ-SVH, 2018 WL 4599860,

---

[1] The statute also requires that motions to withdraw be "timely." 28 U.S.C. § 157(d). The Harlow plaintiffs have not contested the timeliness of Wells Fargo's motion and the court finds that it is timely.

at *2 (D.S.C. Sept. 6, 2018) (citations omitted), report and recommendation adopted No. 4:18-1888-MGL, 2019 WL 1075072 (D.S.C. Mar. 7, 2019). "The burden of demonstrating grounds for withdrawal is on the movant." In re Peanut Corp. of America, 407 B.R. 862, 864 (W.D. Va. 2009) (citing In re U.S. Airways Grp., Inc., 296 B.R. 673, 677 (E.D. Va. 2003)).

### a. Mandatory Withdrawal

This case asks the court to first determine the scope of the mandatory withdrawal provision or, in other words, what it means for "resolution of the proceeding" to "require[] consideration of both Title 11 and other laws of the United States." 28 U.S.C. § 157(d). "There is no controlling precedent in the Fourth Circuit regarding the mandatory withdrawal provision of § 157(d), and courts elsewhere are not uniform in their construction of the phrase 'requires consideration' as set forth in the statute." In re Dozier Fin., Inc., 2019 WL 1075072, at *3.

Some courts read § 157(d) liberally, holding that withdrawal is mandatory in any Title 11 proceeding that "presents a non-Title 11 federal question which will affect the outcome of the proceeding." In re Contemporary Lithographers, Inc., 127 B.R. 122, 127–28 (M.D.N.C.1991). The majority approach, developed in the Second Circuit and adopted by the Seventh Circuit, holds that mandatory withdrawal is "not available merely whenever non-Bankruptcy Code federal statutes will be considered in the Bankruptcy Court proceeding, but is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990); see also Matter of Vicars Ins. Agency, Inc., 96 F.3d 949, 952 (7th Cir. 1996) (adopting Second Circuit's interpretation). This court's neighboring district

4

has rejected both the liberal approach and the "substantial and material consideration" test, and instead posits that withdrawal is mandatory if "an issue or question of non-bankruptcy federal law [is] essential or material to the disposition of the bankruptcy proceeding." In re U.S. Airways Group, Inc., 296 B.R. 673, 679 (E.D. Va. 2003). Another district court within the Fourth Circuit seems to view these tests as more or less the same, explaining that withdrawal is mandatory "if the application of non-bankruptcy federal law is essential (i.e., substantial and material) to the bankruptcy proceeding." In re Dozier Fin., Inc., 2019 WL 1075072, at *3.

Still others seem to require something beyond "substantial and material consideration" of non-bankruptcy law, such as a certain level of complexity or the existence of some effect on interstate commerce. See, e.g., In re TPI Int'l Airways, 222 B.R. 663, 667 (S.D. Ga. 1998) (holding that withdrawal is mandatory "when complicated interpretive issues, often of first impression, have been raised under non-Title 11 federal laws or when there is a conflict between the bankruptcy and other federal law," if resolution of those issues is "essential to the dispute"); In re Forks Specialty Metals Inc., AP 19-28, 2020 WL 2098099, at *1 (E.D. Pa. May 1, 2020) ("withdrawal of the reference is mandatory only where resolution of the claims will require 'substantial and material' consideration of non-code federal statutes that have more than a de minimis impact on interstate commerce"). Indeed, Wells Fargo argues that the consideration of any laws regulating activities affecting interstate commerce—presumably substantial, material, essential, or none of the above—"may be enough to warrant mandatory withdrawal." ECF No. 10 at 4 (citing, e.g., Burger King Corp. v. B-K of Kansas, Inc., 64 B.R. 728, 732 (D. Kan. 1986) ("Resolution of the adversarial proceeding will require consideration

5

of both title 11 and other federal laws regulating activities affecting interstate commerce, and under section 157(d), the proceeding is properly transferable to this court.").

This court need not decide exactly which test is appropriate, as this case seems to satisfy even the most demanding.[2] It is undisputed that the RICO claim in the Harlow plaintiffs' adversary complaint "presents a non-Title 11 federal question which will affect the outcome of the proceeding." In re Contemporary Lithographers, Inc., 127 B.R. at 127–28; see ECF No. 5 at 8. The plaintiffs' RICO claim centers on Wells Fargo's alleged practice of filing false notices of mortgage forbearance, impacting "at least 904 Chapter 13 debtors." ECF No. 5 at 8, 12. Wells Fargo alleges that deciding this claim will involve analysis of their "obligations to comply with a variety of federal laws and regulations, including the CARES Act, especially as it requires mortgage servicers like Wells Fargo to offer mortgage forbearances to all borrowers." ECF No. 10 at 5. However, as plaintiffs point out, Wells Fargo does not explain which CARES Act provisions are specifically at issue. ECF No. 5 at 8. Plaintiffs state, without much explanation, that disposition of their claims will not involve significant interpretation of the CARES Act, "as nothing in the relevant sections authorizes Wells Fargo to file false documents in the Bankruptcy Court or to place borrowers into forbearance without their consent." Id. at 8 n. 4. Regardless of how the CARES Act may or may not ultimately be used in Wells Fargo's defense, this case appears to involve a novel application of RICO. The court

---

[2] The only approach this court outright rejects is the narrowest one. Some courts focus on the usage of the words "both" and "and" in 28 U.S.C. § 157(d) to mandate withdrawal only when substantial consideration of both bankruptcy and non-bankruptcy law is necessary. See, e.g., In re American Freight System, 150 B.R. 790, 793 (D. Kan. 1993). But, as the Seventh Circuit explained, "it would be somewhat anomalous to require withdrawal of a proceeding that contains, say, both title 11 and complex antitrust interpretation issues, but leaves to the bankruptcy court those cases or proceedings that require complex analysis of the antitrust statutes alone." Matters of Vicars Ins. Agency, Inc., 96 F.3d at 953. The court rejects this view on the grounds suggested by the Seventh Circuit.

6

finds that determination of these numerous and novel RICO claims is essential to the dispute and will involve substantial and material interpretation of RICO. See, e.g., In re Schlein, 188 B.R. 13, 14 (E.D. Pa. 1995) (holding that complaint containing allegations that defendants used U.S. mail and interstate wires on at least 100 occasions in violation of RICO "necessitate[d] the substantial and material consideration of RICO, which trigger[ed] the mandatory withdrawal provision"). The court finds that these issues are sufficiently complex to mandate withdrawal, and the parties do not seem to dispute that Wells Fargo's activities at issue affect interstate commerce. See ECF No. 5 at 8; ECF No. 10 at 3–4.

### b. Permissive Withdrawal

Even if withdrawal is not mandatory, a court may exercise its discretion to withdraw the reference under certain circumstances. The Fourth Circuit has not enumerated factors to consider for permissive withdrawals, but its district courts have routinely applied the following factors developed by other circuits: "(i) whether the proceeding is core or non-core; (ii) the uniform administration of bankruptcy proceedings; (iii) expediting the bankruptcy process and promoting judicial economy; (iv) the efficient use of [the parties'] resources; (v) the reduction of forum shopping; and (vi) the preservation of the right to a jury trial." In re Peanut Corp. of America, 407 B.R. at 865 (citing In re U.S. Airways Group, Inc., 296 B.R. 673, 677 (E.D. Va. 2003)); see also In re Dozier Fin., Inc., CV 4:18-1888-MGL, 2019 WL 1075072, at *4 (D.S.C. Mar. 7, 2019) (similar); In re QSM, LLC, 453 B.R. 807, 809–10 (E.D. Va. 2011) (collecting cases). "The district court has broad discretion in deciding whether reference should be withdrawn for cause shown." Albert v. Site Mgmt., Inc., 506 B.R. 453, 455 (D. Md. 2014).

**Whether the proceeding is core or non-core**. "Core proceedings are set forth in 28 U.S.C. § 157(b)(2) and, while the statutory list is not exhaustive, such proceedings arise from rights created by the Bankruptcy Code or consist of claims that could only arise in a bankruptcy proceeding." In re Dozier Fin., Inc., 2019 WL 1075072, at *4. The statute includes "counterclaims by the estate against persons filing claims against the estate" as core claims. See 28 U.S.C. § 157(b)(2)(C). The Harlow plaintiffs argue that Counts III (violations of Fed. R. Bankr. P. 3002.1), IV (objection to false forbearance notices), V (violations of the automatic stay), VI (abuse of process), VII (contempt), and VIII (fraud on the court) could only arise within the bankruptcy proceeding and have specific harms within the bankruptcy context and, therefore, are core. ECF No. 5 at 10. The plaintiffs also argue that the "remainder of Plaintiff's claims are core claims 'arising in' Title 11, regardless of the fact that they implicate other federal or state laws, because all…are based on actions taken by [Wells Fargo] within the Plaintiffs' and the class members' Chapter 13 bankruptcy cases." ECF No. 5 at 10. Wells Fargo says this case "unquestionably" involves "a mix of core and non-core claims" but it argues that the existence of the RICO claim is paramount. ECF No. 10 at 7. Indeed, federal courts have held that RICO claims are non-core and not matters which the Bankruptcy Court would ordinarily be expected to have greater familiarity or expertise than the district court. See, e.g., Adelphia Commc'ns Corp. v. Rigas, No. 02 CIV.8495 GBD, 2003 WL 21297258, at *2 (S.D.N.Y. June 4, 2003) (finding that federal securities claims, RICO claims, and other state law claims were all non-core, though ultimately denying the motion to withdraw). Wells Fargo also notes that the Harlow plaintiffs' RICO claim is practically identical to the one alleged in the Forsburg litigation, outweighing the preference for keeping the core claims within the bankruptcy court.

ECF No. 10 at 7. The court finds that both parties have strong arguments under this factor and it does not weigh in favor of either.

**Uniform Administration of Bankruptcy Proceedings**. The Harlow plaintiffs argue that Wells Fargo's conduct has several specific impacts on bankruptcy debtors and the bankruptcy system, as their automatic forbearances may, at best, temporarily upend their Chapter 13 bankruptcy repayment plan at best and, at worst, result in denial of the debtor's discharge as to all creditors at the end of the case. The court is sympathetic to this argument, but "where the causes of action involve exclusively or almost exclusively state law and non-bankruptcy federal law issues, courts in this Circuit have held adjudication of the adversary complaint in district court will not result in the uneven administration of bankruptcy proceedings." In re Dozier Fin., Inc., 2019 WL 1075072, at *5. Like in In re Dozier Fin., Inc., it seems that "the overwhelming majority of the issues raised in the adversary proceeding involve the application and interpretation of non-bankruptcy federal law and [] state law," and therefore bear as much on the uniform administration of any federal proceeding as they do on bankruptcy proceedings. Id.; see also KV Oil & Gas, Inc. v. Ctr. Equities, Inc., C.A. No. 2:09-cv-00188, 2:09-mc-00068, 2009 WL 2762062, at *4 (S.D. W. Va. Aug. 27, 2009) ("Withdrawing the reference certainly will not affect the uniform administration of bankruptcy law because the Complaint raises issues governed by non-title 11 law."). Accordingly, the court finds that this second factor does not weigh in favor of either party.

**Expediting the Bankruptcy Process & Promoting Judicial Economy**. The Harlow plaintiffs argue that the facts at issue in Harlow are mostly resolved by the report Wells Fargo submitted to Congress detailing its response to the CARES Act, whereas the Forsburg

9

discovery has barely started and will be more complex than necessary for this case. ECF No. 5 at 12. Accordingly, removal and consolidation will delay the bankruptcy process unnecessarily and do little to promote judicial economy. Id. Wells Fargo argues that failure to withdraw the reference will mean that the district court and the bankruptcy court "will be overseeing putative national class actions against [Wells Fargo] that involve the same set of facts and at least some of the exact same claims, specifically…the RICO claim." ECF No. 10 at 8. The court finds this argument particularly compelling when considering judicial economy. Notably, the Harlow plaintiffs do not oppose consolidation should this court withdraw the reference. This mutually agreeable consolidation, given the common issues of law and fact, is yet another reason that withdrawal of the reference is prudent. Big Rivers Elec. Corp. v. Green River Coal Co., 182 B.R. 751, 755 (W.D. Ky. 1995) (quoting In re Wedtech Corp., 81 Bankr. 237, 239 (S.D.N.Y. 1987)) ("Where a proceeding in bankruptcy involves common issues of law and fact with a case pending in district court, 'the overlapping of facts, transactions, and issues in the two cases…is good cause for withdrawal of the reference and consolidation with the district court proceeding.'"). The court finds that this factor weighs in favor of withdrawal.

**Efficient Use of the Parties' Resources**. The Harlow plaintiffs argue that withdrawal will do little to conserve resources as this case is very different from Forsburg because of its unique relationship to bankruptcy debtors and the bankruptcy process. Notably, many of the counts included in the adversary complaint are core, whereas "it is [generally] a more efficient use of the parties' and the court's resources to withdraw the reference from the Bankruptcy Court where the proceedings are non-core." In re Minor Family Hotels, LLC, Nos. 10-06108, 10-06109, 10-06112, 10-06118, 2010 WL 5141342, at *3 (W.D. Va. Dec. 10, 2010) (emphasis

10

added) (citing In re Peanut Corp. of Am., 407 B.R. at 866). However, the Harlow plaintiffs' RICO claim is non-core and unique given its overlap with the Forsburg litigation. Given this overlap and the possibility for consolidation, the court finds that this factor weighs slightly in favor of withdrawal.

**Reduction of Forum Shopping**. The Harlow plaintiffs argue that Wells Fargo wished to avoid having the bankruptcy judge rule on the plaintiffs' motion for contempt for Wells Fargo's failure to comply with the preliminary injunction. ECF No. 5 at 13. They note that Wells Fargo has filed motions to transfer cases similar to Forsburg to the Western District of Virginia, but not to the Northern District of California, which has already denied its motion to transfer, and that this behavior suggests forum shopping. Id. at 13–14. Wells Fargo argues that it is not attempting to forum shop and the efficient handling of the Harlow and Forsburg litigation requires withdrawal of Harlow, as the Forsburg litigation cannot be referred to the bankruptcy court. ECF No. 1 at 35. Perhaps, Wells Fargo's "actions, viewed collectively, do not indicate a desire to forum shop, but rather show a desire for one court to hear and oversee the entire adversary proceeding," or at least most of the cases against it. In re Dozier Fin., Inc., 2019 WL 1075072, at *5. Overall, though, the court finds that this factor weighs against withdrawing the reference.

**Preservation of the Right to a Jury Trial**. The Harlow plaintiffs argue that the mere possibility of a jury trial does not warrant removal from bankruptcy court, and the bankruptcy court is well suited to oversee bankruptcy-specific issues prior to any trial that might be needed. ECF No. 5 at 14. But "[w]here defendants, as here, have a right to jury trial and do not consent to a jury trial in bankruptcy court, courts have found withdrawal of the reference

11

promotes judicial economy." In re Dozier Fin., Inc., 2019 WL 1075072, at *5 (citation omitted). Here, Wells Fargo unequivocally states in its reply that it will not consent to a jury trial in the bankruptcy court for those claims to which it is entitled a jury trial. ECF No. 10 at 12. The court "finds the right to a jury trial, coupled with the [Wells Fargo's] refusal to consent to a jury trial in the bankruptcy court, weighs heavily in favor of withdrawing the reference." In re Dozier Fin., Inc., 2019 WL 1075072, at *5.

In sum, the court finds that the combination of core and non-core claims and the uniform administration of bankruptcy proceedings do not weigh in favor of either party, and its prerogative to reduce forum shopping and the plaintiffs' other concerns are outweighed by the promotion of judicial economy, efficient use of the parties' resources, and the preservation of Wells Fargo's right to a jury trial.

### III. CONSOLIDATION

Wells Fargo also asks the court to consolidate this adversary proceeding with the Forsburg litigation pursuant to Federal Rule of Civil Procedure 42. ECF No. 1 at 37. Should the court withdraw the reference to the bankruptcy court, the Harlow plaintiffs do not oppose consolidation. ECF No. 5 at 14. Because of the common issues of law and fact between the two cases and because neither party opposes consolidation, the court will consolidate the withdrawn adversary proceeding with the Forsburg litigation.

### IV. CONCLUSION

For these reasons, the court **GRANTS** Wells Fargo's motion to withdraw the reference of this adversary proceeding to the bankruptcy court and to consolidate it with the Forsburg

litigation, ECF No. 1. Given certain deadlines in the bankruptcy proceeding, the court previously entered an order corresponding to this memorandum opinion, ECF No. 12.

It is so **ORDERED**.

Entered: 03/09/2021

Michael F. Urbanski
Chief U.S. District Judge
2021.03.09 09:30:31
-05'00'

Michael F. Urbanski
Chief United States District Judge

13